STATE OF MAINE
KENNEBEC, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-11-39,
*MMM - KEN - 3/27/2012*

FAMILIES UNITED OF
WASHINGTON COUNTY,
    Petitioner

v.

ORDER ON
80C PETITION

COMMISSIONER, MAINE DEP'T OF
HEALTH AND HUMAN SERVICES,
    Respondent


Petitioner Families United of Washington County appeals from the final decision

of the Department of Health and Human Services, which affirmed the award of a state

contract for family services in Washington and Hancock counties (District 7) to a party

other than Petitioner. Note that in AP-11-38, Petitioner simultaneously appeals the award

of a similar contract to another party in Penobscot and Piscataquis counties (District 6).

Although the two appeals raise similar issues, they have not been consolidated and the

Court issues separate orders.


**Regulatory background**

The contract in question here was the product of Maine's competitive bidding

process. Generally speaking, competitive bidding requires that contracts awarded by any

state agency go to the "best-value bidder," considering "the qualities of the goods or

1

services to be supplied, their conformity with the specifications, the purposes for which they are required, the date of delivery and the best interest of the State." 5 M.R.S.A. § 1825-B(7).

Pursuant to 5 M.R.S.A. § 1825-C, the Division of Purchases promulgates rules governing the award of contracts and appeal thereof. One such rule is that all contract decisions must be made through the competitive bidding process using Requests for Proposals (RFPs). 18-554 C.M.R. ch. 110, § 2(A). At a minimum, the RFP must include, "a clear definition (scope) of the project, [and] the evaluation criteria and relative scoring weights to be applied . . . ." *Id.* § 2(A)(i). The contract must be awarded "to the highest rated proposal which conforms to the requirements of the state as contained in the RFP." *Id.* § 3(A)(iv).

**Factual and procedural background**

On September 28, 2010, the Department of Health and Human Services (the Department) issued RFPs in each of Maine's eight public health districts soliciting proposals for the implementation of family reunification programs. The objective of these programs is to return children in protective custody to their natural families as swiftly and safely as possible. (R. 9.)[1] The RFP in question is RFP # 201009774, seeking family reunification services for Hancock and Washington counties (District 7). In each of the eight districts, the Department assembled a team of three State employees to review the proposals. The District 7 Review Team consisted of team leader Nick

---

[1] The administrative record consists of the transcript ("Tr.") and everything else arranged with continuous page numbers ("R.").

Pappas, Kelly Moore, and Roger Brodeur, all associated with the Department. (Tr. 126-128, 135-136.)

The Review Team received five total bids, including one from Petitioner Families United of Washington County (Families United). The Review Team scored the proposals pursuant to the RFP and selected a bid submitted by Spurwink, sending notice of its decision on February 23, 2011. (R. 428.) By letter of March 10, 2011, Mary Wegrzyyn, executive director at Families United, requested an appeal hearing pursuant to chapter 120. (R. 430.)

On May 13 and 16, 2011, an Appeal Panel of three State workers convened and held an evidentiary hearing. On June 10, 2011, the Appeal Panel issued its final decision, which affirmed the award of the contract to Spurwink. (R. 532.) On July 8, 2011, Families United filed the present appeal in this Court pursuant to M.R. Civ. P. 80C. Counsel for Spurwink entered its appearance to oppose the petition, but did not submit a brief or appear at oral argument.

**Features of the RFP and the Review Team's evaluation process**

Under the RFP, each proposal was to be scored based on a 100 point scale divided up between three principle categories of criteria: (1) "Organization Qualifications and Experience" was worth 25 points, (2) "Specifications of Work to be Performed" was worth 40 points, and (3) "Cost Proposal" was worth 35 points. (R. 27-28.) The RFP laid

3

out a limited description of each category,[2] but did not allot points for criteria within each category. Rather:

> **Scoring Process:** The review team will use a <u>consensus</u> approach to evaluate the bids. Members of the review team will not score the proposals individually but instead will arrive at a consensus as to assignment of points on each category of each proposal. However, the Cost section will be scored according to a mathematical formula described below.

(R. 28.)

Within the first two categories, it was up to the review teams to independently decide how to assign and weigh the available points. Claire Austin, who wrote the RFP, testified that some review teams devised their own weighted "sub-category" system that allotted points within the broader categories, while some did not.[3] Nick Pappas, team leader for the District 7 Review Team, testified that he and his team used such a weighted "sub-category" scoring system to review the proposals. (Tr. 142-143.)

The third category, cost, consisted of 35 total points. The lowest bidder automatically got 25 of these points, while the remaining bidders received a score prorated against that figure ("Proposals with higher bids will be awarded proportionally fewer points calculated in comparison with that lowest bid.").[4] (R. 27.) The remaining

---

[2] For instance, the category labeled "Organization Qualifications and Experience" includes "organizational and personnel qualifications, required credentials, operational site(s), experience with similar projects and service populations, references, etc." (R. 27.)

[3] Ms. Austin testified in a May 2, 2011 hearing in connection with the District 6 appeal (now AP-11-38), but the parties agreed to admit her testimony in the District 7 appeal. (Tr. 8.)

[4] The formula used was: (Lowest submitted cost ÷ cost of proposal being scored) x 25 = pro-rated score, so that a bidder's score dropped in proportion to the amount by which it exceeded the lowest bidder's score. (R. 27.)

4

10 points were used to score the "narrative material and supporting documentation." *Id.* Under this formula, a third bidder, KidsPeace, won the cost category with 29 total points. (R. 404.)

The RFP also contained detailed instructions to bidders on how to prepare their proposals, specifying questions to be answered and documents to be attached. The bidders were instructed, "only materials offered in the proposal, information provided through interviews (if any) and Department information of previous contract history will be criteria for award consideration." (R. 23.) Note that the RFP states, "[i]t is the responsibility of the bidder to provide all information requested in the RFP package at the time of submission. Failure to provide information requested in this RFP will, at the very least, result in a lower rating for the incomplete sections and may result in the proposal being disqualified for consideration." (R. 27.) However, "[t]he State, at its sole discretion, reserves the right to recognize and waive minor informalities and irregularities for proposals received in response to this RFP." (R. 23.)

Under this scoring rubric, Spurwink won the bid with 83.48 points. Families United came in second with 80.90 votes. (R. 404.)

## Discussion

The final agency action subject to review here is the Appeal Panel's June 10, 2011 decision that affirmed the contract award to Spurwink.[5] (R. 532.) Thus, we review that decision and reverse or modify only if it is in violation of constitutional or statutory

---

[5] When an administrative body acts as both factfinder and decision maker, the Superior Court will review its decision directly. *FPL Energy Maine Hydro LLC v. Dep't of Envtl. Prot,* 2007 ME 97, ¶ 14, 926 A.2d 1197.

provisions, in excess of the agency's statutory authority, made upon unlawful procedure, affected by bias or error of law, unsupported by substantial evidence on the whole record, or arbitrary or capricious or characterized by abuse of discretion. Families United raises the following issues in its appeal[6]:

I.    *The Review Team's use of sub-category criteria*

Families United first argues that the Review Team's use of sub-categories not contained in the RFP constituted flawed and unlawful procedure. (Pet. Br. 3-5.) Families United claims that it lacked notice and could not reasonably anticipate the standards by which it would be judged because the Review Team devised the standards and assigned weights themselves before evaluation.

It is true that a contract awarded through competitive bidding must go to the "highest rated proposal which conforms to the requirements . . . contained in the RFP." 18-554 C.M.R ch. 110, § 3(A)(iv). However, there is nothing in the rules to prevent a review team from internally articulating, for the sake of clarity and consistency, the elements that make up each requirement. Here, as the Appeal Panel found, the sub-

---

[6] KidsPeace argues as an initial matter that Families United's appeal was untimely at the administrative level and that it failed to establish the scope of issues on appeal. Families United had 15 days to request an appeal from the time of "notification of contract award." 18-554 C.M.R. ch. 120, § 2(2). Families United was notified of the award by letter of February 23, 2011, and it requested an administrative appeal by letter of March 10, 2011. (R. 478.) KidsPeace's theory is unclear, (KidsPeace Br. 7), but even if Families United received notification of the contract award on the same day it was mailed, February 23, its request of March 10 would fall exactly 15 days later. KidsPeace also argues that the letter of March 10, 2011, from Mary Wegrzyyn did not adequately identify the grievances raised in the appeal. 18-554 C.M.R. ch. 120, § 2(2) ("A written request for appeal hearing must contain at a minimum the specific nature of the grievance, including the Appeal Criteria. . . ."). KidsPeace does not, however, venture to explain what it considers to be missing from Ms. Wegrzyyn's four-page letter. Thus, the Court moves on to the merits of the appeal.

6

categories corresponded to the general scoring categories and did not alter the overall criteria and weights contained in the RFP. (R. 536.)

To focus the issue more precisely, Families United does not seem to argue that the RFP's limited, three category scheme itself lacks a "clear definition . . . of . . . the evaluation criteria and relative scoring weights to be applied," as required by chapter 110, § 2(A)(i). Thus, Families United would presumably not object to the alternative of what happened, which would be the Review Team using no further criteria, or inconsistent criteria, to assign points for each category. The sub-category approach, in contrast, ensured consistent and methodical evaluation of each applicant.[7] The fact that review teams in other health districts used different approaches is immaterial because these dealt with entirely separate contracts. Therefore, the Court concludes that the sub-category approach, as affirmed by the Appeal Panel, did not constitute flawed and unlawful procedure, or any other infirmity.

II.     *The Review Team's composition – Bias and consideration of Families United's past contract performance*

The issue of the Review Team's composition really consists of two separate issues. First, Families United argues that the District 7 Review Team suffered from built-in bias based on the fact that two of its three members apparently had prior experiences working with Families United. (Pet. Br. 8-10.) Team Leader Pappas, who had past work experience with Families United, inquired with Ms. Austin about the propriety of participating on the Review Team, (Tr. 160), but that in itself means nothing – Pappas

---

[7] Additionally, Families United complains that the scoring sheets for some bidders in District 7 do not reveal use of the sub-categories. (Pet. Br. 5-8.) However, due to the fact that those bidders placed below both Families United and Spurwink, any error was harmless to Families United and the Court declines to address the issue further.

7

clearly stated that his past experience had no prejudicial effect on his evaluation of Families United. (Tr. 161.) Families United submits no other evidence of actual or structural bias; some degree of familiarity with the bidders is to be expected when Review Team members are selected for their work in the field. Thus, the Court concludes that the Review Team's composition was sound.

Second, Families United argues that the Review Team was impermissibly allowed to consider and rely on its members' work-related past impressions of Families United to score the RFP. (Pet. Br. 10-12.) The Review Team did in fact deduct 2 points from Families United, noting, "staff retention a problem." (R. 474a.) Families United maintains that this subjective element violated the RFP, which, again, stated, "only materials offered in the proposal, information provided through interviews (if any) and *Department* information of previous contract history will be criteria for award consideration." (R. 23) (emphasis added.) "In other words, the RFP dictated that only official Department evaluation history could be properly considered." (Pet. Br. 12.)

Families United offers no evidence to support its theory that "Department information of previous contract history" means strictly "official Department evaluation history." The Review Team members in question presumably encountered Families United in their capacities as Department personnel, and so a fair reading of the RFP would bring these experiences within the meaning of "Department information." The consideration of a bidder's history in providing services is directly related to an assessment of a bidder's capability to deliver responsive services, and Families United even acknowledged that staff retention has been an issue. (R. 117-118.) The Court, thus, finds no error in the Review Team's consideration of this information.

8

III.    *Application of the RFP criteria to Spurwink – litigation disclosure and Rider G*

As noted, the RFP contained detailed instructions to bidders on how to prepare their proposals, specifying questions to be answered and documents to be attached. Here, Families United challenges two of those items as they pertain to Spurwink's proposal. First, the RFP required a "list of all current litigation in which the Bidder is named and a list of all closed cases in which Bidder paid the claimant either as part of a settlement or by decree." (R. 29.) To this, Families United disclosed one ongoing case, (R. 468), and Spurwink's attorney disclosed several closed and ongoing cases through a letter attached to the proposal, (R. 243, 381-383). In the cost section, where 10 points were available for "budget forms and budget narrative," Families United received 8 points and the Review Team included a note: "Pending Law Issue (potential Cost Issues?)." (R. 406.) Spurwink received 9 points, and the Review Team made no similar note about legal costs. Families United argues: "[i]t is quite obvious that Families United's score was unfairly lowered due to the erroneous reading of the competing RFP's." (Pet. Br. 14.) Team leader Pappas testified, however, that the Review Team did not directly demerit Families United because of its pending litigation, (Tr. 169-170), but, rather, awarded global scores based on the factors they discussed, (Tr. 165-170). Given the standard of review under § 11007, the Court defers to the Appeal Panel's decision not to substitute its judgment for that of the Review Team.

Second, the RFP required several "Signed Assurances for compliance with State and Federal requirements." (R. 33.) Appendix A contained "Required Forms," one of which was Rider G, "identification of country in which contracted work will be performed." (R. 43, 46.) Written instructions to the Review Team directed it to

9

determine at the outset whether bidders satisfied the "pass/fail" requirements. (R. 396.) Spurwink's proposal failed to include the Rider G form, but the Review Team did not disqualify it or reduce its score because of it.

Families United argues that Spurwink should have been disqualified for its failure to include the Rider G form, as it was a "pass/fail" requirement. (Pet. Br. 12-13.) The Appeal Panel concluded that Rider G was not an "assurance" to begin with, and was thus outside the scope of the required forms subject to "pass/fail" treatment. (R. 537-538.) Unlike "Attachment 2: Assurances," by way of comparison, it did not have a signature line and was neither labeled nor in the nature of an assurance relating to compliance with State and Federal requirements. Even had the Rider G been required, the Review Team reserved the discretion to "waive minor informalities and irregularities." (R. 23, 538.)

The Court, thus, concludes that the Review Team's approach to the litigation disclosure and Rider G requirements, and the Appeal Board's validation thereof, was sound.

IV. *Reduction of Families United's score based on substance abuse inexperience*

Families United next argues that the District 7 Review Team reduced its score because of "no direct substance abuse service experience," whereas substance abuse was not a criteria identified in the RFP. (Pet. Br. 14; R. 409.) However, substance abuse is an obstacle to successful family reunification and agency experience in that arena would presumably be relevant in providing family services. (Resp. Br. 18.) The Review Team had discretion to assess factors it considered relevant to the analysis, and consideration of substance abuse services comports with the overall category and sub-category scheme. Additionally, team leader Pappas noted that the Review Team did not deduct points from

10

Families United per se, but rather, assigned scores based on where the bidders fell on a continuum. (Tr. 175-176.) The Appeal Board committed no error in accepting this explanation from the Review Team.

V.    *The mathematical cost score*

Families United argues that the mathematical formula used to calculate the bidders' cost scores was fundamentally unfair because it "rewarded any proposal that contained unrealistic and/or intentionally low estimates of cost." (Pet. Br. 15.) The lowest cost bidder automatically got 25 out of 35 possible points in that category, with the higher bidders receiving proportionally fewer points in comparison to the lowest bid. (R. 28.) Families United argues that the lowest bidder, KidsPeace, used unrealistic cost estimates to purposely drive down the scores of the other bidders. (Pet. Br. 15-16.)

It is certainly in the State's best interest to secure a bidder with a low relative price tag. In fact, the regulations require that any RFP include a minimum 25% weight attached to cost. 18-554 C.M.R. ch. 110, § 2(A)(i)(aa). As the cost factor is a pure issue of numbers, awarding points proportionally based on a straightforward mathematical formula is a reasonable and fair approach. As to Families United's position that the travel expenses listed by KidsPeace were understated, that is a separate issue from the mathematical formula itself. In any case, the successful bidder will be bound by its cost proposal. Thus, the Court concludes that the mathematical cost formula was not inherently flawed and fundamentally unfair or otherwise infirm.

11

The entry will be:

       The Court AFFIRMS the Department's award of the contract to Spurwink.

3/27/12

**DATE**                           **SUPERIOR COURT JUSTICE**

F

| Date Filed | 7/8/11 | Kenebec | Docket No. | AP-11-39 |
| | | County | | |

Action    Petition For Review
                80C

**J. Murphy**

(re: Washington & Hancock)
Families United of Washington County    vs.

Spurwink Services (Intervenor)
Commissioner, DHHS

| Plaintiff's Attorney | Defendant's Attorney |
| --- | --- |
| Jay P. McCloskey, Esq.<br>27 Bellevue Avenue<br>Bangor, ME  04401 | N. Paul Gauvreau, AAG<br>6 State House Station<br>Augusta, ME  04333-0006<br><br>Graydon Stevens, Esq.  (Spurwink, Interven<br>PO Box 597<br>Portland, ME  04112-0597 |

| Date of Entry | |
| --- | --- |
| 7/14/11 | Petition For Review Of Final Agency Action, filed 7/8/11.  s/McCloskey, Esq. |
| 7/14/11 | Entry of appearance, filed 7/13/11.  s/Gauvreau, AAG (for DHHS) |
| 7/14/11 | Entry of appearance, filed 7/13/11.  s/Stevens, Esq. (for Spurwink Services, Inc.) |
| 8/8/11 | Respondent's Motion for Extension of Time to File Administrative Record, filed. s/Gauvreau, AAG<br>Proposed Order, filed. |
| 8/10/11 | ORDER, Murphy, J.  (8/9/11)<br>The Respondent's Motion for Extension of Time is GRANTED.  Respondent is ordered to file the administrative record on appeal no later than 8/22/11. Copy to attorneys of record. |
| 8/15/11 | Certified copy of Administrative Record, filed. s/Gauvreau, AAG |
| 8/24/11 | Notice And Briefing Schedule issued, mailed to attorneys of record. |
| 8/29/11 | Original Certificate of transcriber for hearing transcript; copies of statutes and regulations, filed 8/23/11.  s/Gauvreau, AAG |
| 10/5/11 | Petitioner's Memorandum In Support Of 80C Appeal, filed 10/3/11. s/McCloskey, Esq. |
| 11/2/11 | Brief Of Respondent Department Of Health And Human Services, filed 11/1/11 s/Gauvreau, AAG |
| 11/17/11 | Petitioner's Reply Brief, filed 11/14/11.  s/McCloskey, Esq. |
| 2/2/12 | Oral argument scheduled for 3/8/12 at 11:00 a.m.<br>List mailed to attorneys of record. |
| 2/15/12 | Letter advising Spurwink will not appeal for oral argument, filed 2/8/12. s/Stevens, Esq. |

| Date of Entry | Docket No. ___AP-11-39___ |
|---|---|
| 3/12/12 | Oral argument held 3/8/12, J. Murphy presiding.  Jay McCloskey, Esq. for Petitioner.  N. Paul Gauvreau, AAG for Respondent.<br>Tape 1485, Index 2996-5285.<br>Under advisement. |
| 3/27/12 | ORDER on 80C Petition, Murphy, J.  (3/26/12)<br>The Court AFFIRMS the Department's award of the contract to Spurwink.<br>Copy to Atty McCloskey, AAG Gauvreau, Atty Stevens, and repositories. |
| 3/27/12 | Notice of removal of exhibits mailed to Atty McCloskey and AAG Gauvreau. |